UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------ x

TREMAINE JOHNSON,

Plaintiff,

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER NELSON ESCOBAR, ALL ABOUT AUTOMOTIVE II INC., and SANDRA RIVERA,

Defendants.

------------------------------------------ x

**PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

15 Civ. 5873 (ENV) (VMS)

**VERA M. SCANLON, United States Magistrate Judge:**

Before this Court on referral from the Honorable Eric N. Vitaliano is an inquest as to Plaintiff Tremaine Johnson's ("Plaintiff" or "Mr. Johnson") damages on the default judgment granted sua sponte by the Court against Defendants Sandra Rivera ("Ms. Rivera") and All About Automotive II Inc. ("All About Automotive," together with Ms. Rivera,

"Defendants").[1] ECF No. 63 at 11.[2] For the reasons set forth below, this Court respectfully recommends that the Court award Plaintiff damages from Defendants Rivera and All About Automotive, jointly and severally, in the amount of $100,425.00, consisting of $75,000.00 in compensatory damages for emotional distress and $25,425.00 in actual damages, including $15,000.00 in attorneys' fees, $9,300.00 in lost income and $1,125.00 in travel expenses.

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff brings this suit under 42 U.S.C. § 1983 and New York State law in connection with his July 6, 2013 arrest for, inter alia, criminal mischief with intent to damage property. See Compl. ¶¶ 17-21, ECF No. 1. Relevant here is Plaintiff's claim for malicious prosecution. See id. ¶¶ 32-37.

---

[1] The City of New York, the New York City Police Department and Police Officer Nelson Escobar (the "Appearing Defendants") were also named in the Complaint, but those Appearing Defendants responded to this action and were granted summary judgment. See ECF No. 63.

[2] For ease of reference, all citations use ECF pagination.

According to the Complaint, on July 6, 2013, Plaintiff brought his grandfather, cousin and uncle to All About Automotive to retrieve his grandfather's vehicle, which had been towed. Id. ¶¶ 16-17. After an alleged altercation involving Plaintiff's cousin and a tow yard attendant, the police arrived, and it was "determined that [P]laintiff's cousin broke a window during" the altercation. Id. ¶ 18. Ms. Rivera is alleged to have then arrived on the scene, to have made false statements regarding Plaintiff, including that he broke the window, and to have insisted on Plaintiff's arrest. Id. ¶ 19. Police officers arrested and charged Plaintiff, id. ¶¶ 20-22, but ultimately all charges were dismissed, id. ¶ 24.

**B. Procedural Background**

Defendants Rivera and All About Automotive did not respond in any way to Plaintiff's Complaint, and the Clerk of Court filed an entry of default against them. See Entry of Default, ECF No. 15. On June 10, 2016, Plaintiff served on Ms. Rivera a subpoena requiring her appearance at a June 21, 2016 deposition. See Rivera Deposition Subpoena, ECF No. 32-2; 6/10/2016 Aff. of Service of Rivera Subpoena, ECF No. 32-3. Ms. Rivera failed to respond to the Subpoena.

Plaintiff filed with the Court a Proposed Order to Show Cause ("Proposed OTSC"). See Proposed OTSC, ECF No. 32. The Court ordered Ms. Rivera to show cause in writing on or before October 7, 2016, as to why she did not appear for her deposition. See 9/26/2016 Order. On September 27, 2016, Plaintiff filed an affidavit reflecting service of the Court's Order on Ms. Rivera. 9/27/2016 Aff. of Service, ECF No. 34.

Ms. Rivera failed to respond to the Court's September 26 Order, and the Court scheduled a contempt hearing. See 10/14/2016 Order. The Court's Order noted that a failure to comply with the Court's Orders or the subpoena could result in sanctions. Id. The Court mailed copies of the Order to Ms. Rivera's last two known addresses (both residential and work addresses), and directed Plaintiff to serve a copy of the order to show cause motion on Ms. Rivera and file proof of service, which he did. 10/17/2016 Aff. of Service, ECF No. 35. Ms. Rivera did not appear at the contempt hearing, and she did not contact any of the parties or the Court. 11/18/2016 Status Letter, ECF No. 37. Plaintiff had not complied with Local Rule 83.6, so the Court directed Plaintiff to

"personally serve Ms. Rivera with all papers related to this matter, . . . a copy of the docket, and a copy of Local Rule 83.6 in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons," directed Plaintiff to file proof of service, and scheduled a subsequent hearing. See 12/16/2016 Order. Plaintiff had Ms. Rivera served personally as directed by the Court, see 12/21/2016 Aff. of Service, ECF No. 40, and counsel submitted a status letter stating that they still had not been contacted by Ms. Rivera, see 1/6/2017 Status Report, ECF No. 41. The Court held a second hearing on January 12, 2017, and Ms. Rivera again failed to appear. See ECF No. 42. As a result, this Court recommended to the District Judge that Ms. Rivera be held in contempt. ECF No. 43.

The District Judge subsequently issued an Order finding that Ms. Rivera has willfully chosen to disregard this lawsuit and the Court's Orders. ECF No. 45 at 1. The Court found that Plaintiff's "claim for malicious prosecution asserted by Mr. Johnson against Ms. Rivera and the towing corporation she allegedly owned, and possibly managed, [All About Automotive], to be supported by well-pleaded, plausible factual

allegations, which, alone is sufficient to plausibly establish liability that would support a default judgment against them." Id. at 2.

The Court issued an Order to Show Cause, directing Ms. Rivera to appear before the Court and show cause as to why a motion for default judgment in this action should not be granted against her and All About Automotive, and finding that the default "has been occasioned by their failure to appear for deposition, failure to answer the complaint against them, and their failure to comply with discovery and other pretrial orders entered in this action." Id. at 2, 6.[3] The Order to Show Cause and the related Memorandum and Order were served on Ms. Rivera and All About Automotive at Ms. Rivera's home address and at All About Automotive. See id. at 4; see also ECF Nos. 47-49. Ms. Rivera again

[3] The Court noted that it had previously denied Plaintiff's motion for default judgment for non-compliance with Local Rule 7.1(a), which requires a movant to file memoranda of law in support of motions for default judgment. ECF No. 45 at 2 n.1. In light of the Court's Order to Show Cause as to why default judgment should not be entered, and the Court's finding that Plaintiff adequately pleaded liability as to his malicious prosecution claim, the Court held that further compliance by Plaintiff with the local rules regarding default judgment was not required. Id.

failed to appear. See 2/14/2017 Order. The Court sua sponte entered a default judgment against Ms. Rivera and All About Automotive, and it reserved an inquest as to damages until after any trial against the Appearing Defendants. Id. The Court mailed a copy of its Order to Ms. Rivera at her home and her place of work, All About Automotive. See id.

Subsequently, the undersigned set a date for an inquest as to damages and mailed a copy of the scheduling order to Ms. Rivera and All About Automotive. 10/12/2018 Order. Ms. Rivera and All About Automotive again failed to appear, and the Court conducted the hearing (the "Hearing") and took testimony from Plaintiff regarding damages. 10/31/2018 Minute Entry; see generally, Tr. of Hearing ("Hrg. Tr."), ECF No. 65. Because the Court has already granted default judgment against Ms. Rivera and All About Automotive, this Court limits its proposed findings of fact and conclusions of law to the issue of damages.

## II. DISCUSSION

### A. Notice

As set forth above, Defendants Rivera and All About Automotive have had repeated, adequate notice of this litigation and, specifically, of the risk of sanctions and default, as well as the inquest as to damages. The Court issued at least seven Orders in an effort to get Defendants to respond, and scheduled at least four conferences in connection with their failure to do so. Even after the Court entered default judgment, 2/14/2017 Order, Defendants did not respond. Defendants had more than adequate notice of this litigation, the entry of default judgment and the damages inquest.[4]

### B. Damages

A party's default constitutes a concession of all well-pleaded allegations, except for those relating to damages. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation

[4] Plaintiff's letter relating to damages does not appear to have been mailed to Defendants, but the Court's recommendation is not dependent on anything in that letter and, accordingly, the failure to mail the letter is not meaningful.

Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The court must conduct an inquiry sufficient to determine the amount of damages to a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see Cement & Concrete Workers, 699 F.3d at 232. Once a defendant is found to be in default, a plaintiff must prove that the compensation he or she seeks relates "to the damages that naturally flow from the injuries pleaded." Greyhound, 973 F.2d at 159. This inquiry may be accomplished by evaluating the detailed affidavits and documentary evidence submitted by the plaintiff or conducting an evidentiary hearing to evaluate the amount of damages to be awarded against a defaulting defendant. See Fed. R. Civ. P. 55(b)(2); see also Cement & Concrete Workers, 699 F.3d at 234 ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009) ("Rule 55(b) commits this decision to the sound discretion of the district court.").

As set forth above, here the Court conducted a hearing to evaluate Plaintiff's damages. During the hearing, Plaintiff testified regarding the events underlying the Complaint, as well as the impact of those events on him, both financial and emotional. See Knox v. Cty. of Putnam, No. 10 Civ. 1671 (ER) (PED), 2014 WL 7330851, at *6 (S.D.N.Y. Dec. 23, 2014) ("Under New York law, damages for emotional distress are . . . recoverable under a cause of action for malicious prosecution." (internal quotation marks & citations omitted)). Plaintiff's testimony was credible and, based on that testimony and the record before the Court, this Court makes the following proposed findings of fact and conclusions of law.

**a. Proposed Findings Of Fact**

1. On July 6, 2013, Plaintiff, then thirty-years-old, with his cousin and uncle, brought his elderly grandfather to All About Automotive in an effort to retrieve his grandfather's car, which contained asthma medication his grandfather needed. Hrg. Tr. 9:10-10:22, 31:22-24.

2. Plaintiff's cousin had an altercation with an employee at All About Automotive during which a window was broken. Id. at 10:23-11:8, 12:4-12.

3. Plaintiff's cousin left the scene, and the police arrived. Id. at 12:13-13:13.

4. Ms. Rivera arrived at the scene after the police and said she wanted Plaintiff arrested immediately and made statements that were false and that led to Plaintiff's and his uncle's arrests. Id. at 14:24-18:2.

5. Plaintiff was arrested on July 6, 2013, at approximately 3:30 a.m. Crim. Ct. Compl., ECF No. 58-1 at 72.

6. Plaintiff was handcuffed behind his back and put in the back of a police car with his uncle, where he waited with the door open for approximately forty minutes. Hrg. Tr. 18:6-8.

7. During that time Plaintiff felt worried about his elderly and ill grandfather, who Plaintiff could hear crying and wheezing outside of the police car. Id. at 28:18-30:22.

8. After leaving All About Automotive, Plaintiff and his uncle were driven in the police car for one or two hours, during which another

individual, who was "hostile and very smelly," was placed in the backseat with them. Id. at 18:6-11, 32:11-33:23. During this drive Plaintiff felt "scared for [his] life," describing it as "one of the worst nights of [his] life." Id. at 33:18-23.

9. Plaintiff spent eight hours at the police precinct before being transported to Central Booking where, after being processed, he was confined for an additional forty-eight hours. Id. at 20:3-8, 35:7-8.

10. During that time, Plaintiff was confined in crowded, "filthy" cells with no air conditioning and without private restrooms. Id. at 35:7-24, 38:11-17, 39:16-40:4, 40:9-24. Due to the crowding, Plaintiff had to stand for three hours and, when space opened up, he slept on the floor and later on a bench. Id. at 35:25-37:16, 38:15-17.

11. Because of food allergies, Plaintiff was unable to eat throughout most of the forty-eight hours and lost seven pounds from the heat and the lack of food. Id. at 38:17-22.

12. Throughout his arrest and detention, Plaintiff felt belittled, demeaned and distraught. Id. at 22:14-21, 26:11-22. He felt as if he had

no rights, was mentally exhausted and was emotionally drained. Id. at 26:16-19, 36:6-8.

13. After approximately forty-five of the forty-eight hours, Plaintiff was able to speak to a Legal Aid lawyer. Id. at 38:1-7, 42:14-17. Plaintiff went before a judge on July 8, 2013, and was released on his own recognizance. Id. at 42:4-13.

14. The Criminal Complaint against Plaintiff was printed on July 7, 2013, at 4:47 p.m., and it was signed on July 10, 2013. See Crim. Ct. Compl. at 72-73.

15. Plaintiff retained private counsel for his defense and incurred $15,000.00 in attorneys' fees. Hrg. Tr. at 22:25-23:7.

16. Plaintiff, who resides in Delaware, commuted back and forth to New York for court appearances five times. Hrg. Tr. 44:4-13. Attending each of the five court appearances cost Plaintiff approximately $120.00 in gas and tolls, and between $90.00-$120.00 in accommodation. Id. at 52:1-53:11. Using the mid-point in the range of accommodation costs ($105.00), Plaintiff incurred $1,125.00 in travel expenses commuting to and from court.

17. Plaintiff testified that the court appearances were frustrating, time consuming and very stressful. Id. at 46:2-6. He described feeling nervous because he did not know what was going on and because he had lost faith in the system as a result of his arrest. Id. at 46:5-6.

18. Plaintiff worked at Long Island University three days a week and as a real estate agent four days a week, and had to take time off from work for each court appearance. Id. at 46:16-47:12.

19. As a result of the criminal proceedings, Plaintiff missed two work-related trainings for which he would otherwise have been paid $900.00, collectively, to teach. Id. at 50:5-15. As a result of the criminal proceedings, Plaintiff lost a real estate deal, through which he would otherwise have earned $8,400.00. Accordingly, Plaintiff incurred actual damages in the amount of $9,300.00 in lost income.

20. In addition to the specific financial losses, the criminal proceedings more generally created difficulties in Plaintiff's work schedule. Id. at 49:11-12; 51,13-20.

21. As a result of the criminal prosecution, Plaintiff became anxious and extremely depressed. Id. at 54:2-10, 55:1-3. He felt scared, had

difficulty sleeping and gained thirty pounds over the course of the prosecution. Id. at 55:4-18. He was an "emotional wreck," and the experience hindered his relationships with family and altered the way he interacts with police officers and others. Id. at 58:2-17, 65:5-6. As a result of the emotional strain of the prosecution, Plaintiff saw a mental health professional for depression on one occasion. Id. at 60:4-8, 62:1-3.

22. Plaintiff also suffered physical manifestations of the emotional distress caused by the prosecution. He developed stress-related back problems and headaches. Id. at 60:1-3, 60:20-61:12. As a result of these physical symptoms, Plaintiff saw a chiropractor, a physical therapist and an acupuncturist. Id. at 60:43-19, 65:10. Plaintiff's headaches and weight gain resolved after the prosecution ended. Id. at 61:1-6, 61:22-25.

23. In November 2014 – one year and four months after its initiation – the case against Plaintiff was dismissed. Id. at 23:8-10; Certificate of Disposition, ECF No. 58-1 at 80.

**b. Proposed Conclusions Of Law**

1. Defendants had adequate notice of this litigation, entry of default judgment and the inquest as to damages. See supra Section II(A).

2. As a result of Defendants' malicious prosecution, Plaintiff suffered actual damages in the amount of $25,425.00, including $15,000.00 in attorneys' fees, $9,300.00 in lost income and $1,125.00 in travel expenses.

3. As a result of Defendants' malicious prosecution, Plaintiff suffered compensatory damages for emotional distress in the amount of $75,000.00. See Stampf v. Long Island R.R. Co. ("Stampf II"), 761 F.3d 192, 206-08 (2d Cir. 2014) (noting that New York cases vary widely in the amount of damages awarded for mental anguish, but finding $100,000 to constitute the high end in a malicious prosecution case and remitting a jury award from $200,000 to $100,000 for past emotional distress where plaintiff was held by police for only a few hours and was never indicted, convicted or sentenced, but suffered greater than garden variety emotional distress) (collecting cases demonstrating range of New York compensatory damage awards);

Martinez v. Port Auth. of NY & NJ, No. 01 Civ. 721 (PKC) (DFE), 2005 WL 2143333, at *22 (S.D.N.Y. Sept. 2, 2005) (declining to remit a jury award of $100,000 for a malicious prosecution claim where plaintiff said criminal "trial made him feel desperate, nervous, and 'like a madman,'" and citing malicious prosecution cases upholding comparable awards); Williams v. Dash, JVR No. 1405220012, 2014 WL 2120618 (N.Y. Sup. Mar. 18, 2014) (jury awarded $50,000 in compensatory damages for malicious prosecution where plaintiff was arrested and arraigned fourteen hours later before the charges were dismissed); Serrantes v. Fogarty, JVR No. 1704050005, 2016 WL 8674520 (S.D.N.Y. Jan. 27, 2016) (settlement of malicious prosecution for $150,000, where plaintiff spent three days in jail).[5]

---

[5] Although arraignment or a criminal complaint formally initiate the criminal proceedings, see Stampf II, 761 F.3d at 198-99, under New York State law, a plaintiff alleging malicious prosecution can be compensated for injuries beginning at the time of arrest and imprisonment, provided they are the direct, natural and proximate result of the prosecution and do not duplicate damages awarded under a claim for false arrest. See Putnam v. Cty. of Steuben, 61 A.D.3d 1369, 1371-72 (4th Dep't 2009) ("Damages for malicious prosecution are recoverable for injuries caused by an arrest and imprisonment and, where there are causes of action for both false arrest and malicious

prosecution, the court must instruct the jury not to make a duplicate award of damages."); see also Jeon v. Hee, No. 11 Civ. 974 (RJD) (VMS), 2015 WL 789984, at *3 (E.D.N.Y. Feb. 24, 2015) ("On a malicious prosecution claim, a plaintiff may obtain damages for the direct, natural and proximate results of the criminal prosecution, including those for suffering arrest and imprisonment . . . .); Loeb v. Teitelbaum, 77 A.D.2d 92, 104-06, 432 N.Y.S.2d 487 (2d Dep't 1980) (considering for damage purposes in a malicious prosecution case against a lay person who falsely reported that plaintiff trespassed, inter alia, plaintiff's arrest, handcuffing and booking process). This is "because the impact upon the feelings, reputation and character by a false accusation as well as that caused by arrest and imprisonment is in many cases the gravamen of the [malicious prosecution] action." Stampf v. Long Island R.R. Auth. ("Stampf I"), No. 07 Civ. 3349 (SMG), 2011 WL 3235704, at *9 (E.D.N.Y. July 28, 2011) (alterations & internal quotation marks omitted) (collecting cases)), aff'd in part & vacated in part, 761 F.3d 192 (2d Cir. 2018); see Halberstadt v. NY Life Ins. Co., 86 N.E. 801, 802 (1909) ("[In] an action [for malicious prosecution] the substantial injury for which damages are recovered and which serves as a basis for the action may be that inflicted upon the feelings, reputation and character by a false accusation as well as that caused by arrest and imprisonment."); 14 NY Prac. NY Law of Torts § 1:84 (stating that plaintiff may recover damages under malicious prosecution for injury to reputation, character, health and feelings). Here, the Court need not determine whether Ms. Rivera's report to the police constitutes "another event triggering commencement of a prosecution." 14 NY Prac. NY Law of Torts § 1:84 ("Damages accrue [for malicious prosecution] from the time of indictment or arraignment or another event triggering commencement of a prosecution."). Consideration of the emotional impact of Plaintiff's arrest and detention prior to formal initiation of criminal proceedings does not alter this Court's recommendation because Plaintiff credibly testified that the prosecution process caused him to relive the entire experience. Hrg. Tr. 61:4-16. Therefore, Plaintiff's emotional distress stemming from the

## III. CONCLUSION

For the reasons set forth above, this Court respectfully recommends that damages be awarded to Plaintiff against Ms. Rivera and All About Automotive, jointly and severally, in the amount of $100,425.00, consisting of $75,000.00 in compensatory damages for emotional distress and $25,425.00 in actual damages, including $15,000.00 in attorneys' fees, $9,300.00 in lost income and $1,125.00 in travel expenses.

## IV. OBJECTIONS

This Report and Recommendation will be filed electronically, and Chambers will mail copies to Defendants Rivera and All About Automotive at Ms. Rivera's home address and All About Automotive's business address.

---

arrest and confinement extended throughout the criminal proceedings as a result of the prosecution. Accordingly, the Court's damages recommendation remains unchanged whether this Court considers the emotional distress caused by Plaintiff's arrest and incarceration itself or simply the prosecution process in which Plaintiff relived the arrest and incarceration.

Written objections to this Report and Recommendation must be filed within fourteen days of service and in accordance with the Individual Rules of the District Judge. Failure to file objections within the specified time waives the right to appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

SO ORDERED.

Dated: August 2, 2019
Brooklyn, New York

Vera M. Scanlon
VERA M. SCANLON
United States Magistrate Judge